IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHRISTOPHER LEE JOYNER, JR.,

    Plaintiff,

v.                                       Civil Action No. 3:10CV406

SERGEANT O'NEIL, et al.,

    Defendants.

## MEMORANDUM OPINION

Plaintiff Christopher Lee Joyner, Jr., a Virginia inmate, brings this action pursuant to 42 U.S.C. § 1983. This case is set for trial on July 12, 2012. This matter is now before the Court on Joyner's Motion in Limine seeking to bar Defendants, Sergeant O'Neil and Deputy Vickrey, from presenting certain evidence at trial. (Docket No. 54.) This motion has been fully briefed. (Docket Nos. 57, 69.) On June 29, 2012, the Court heard oral argument. This matter is now ripe for disposition.

Joyner, in his motion, requests that the Court bar Defendants from presenting the following evidence at trial:

| | |
|---|---|
| Issue 1 | Evidence concerning Joyner's past or current alleged gang affiliation. |
| Issue 2 | (a) Evidence of Joyner's prior convictions. |
| | (b) Evidence of the length of Joyner's current sentence. |
| Issue 3 | Evidence of institutional infractions committed by Joyner at the Virginia Beach Correctional Center ("VBCC") prior to May 22, 2010. |

For the reasons that follow, the Court will GRANT Joyner's Motion in Limine as it pertains to Issue 1 and Issue 2(b), will GRANT IN PART and DENY IN PART Joyner's Motion in Limine

as it pertains to Issue 2(a), and will RESERVE RULING on Joyner's Motion in Limine as it pertains to Issue 3.

## I. Summary of the Allegations

Joyner alleges that on May 22, 2010, he covered his cell window with toilet paper and did not comply with several orders to remove the toilet paper. Several deputies then gathered outside of Joyner's cell and told Joyner to lie on the floor. Joyner did not comply and remained seated on his bunk. Joyner alleges that the deputies then rushed into his cell, retrained Joyner in handcuffs behind his back, and laid him face down on the floor. Sergeant O'Neil then allegedly punched Joyner twice in the head and face area, and Deputy Vickrey allegedly punched Joyner once in the side of the face. Joyner alleges that he had undergone surgery about a week prior to this incident, that he still had wires and stitches in his mouth from the surgery, and that the deputies knew of his current medical condition. He contends that the type of force constituted excessive force in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

Defendants admit that a use-of-force incident occurred on May 22, 2010 involving Joyner, but deny that they used excessive force and deny that the incident occurred in the manner as alleged by Joyner. Defendants intend to present evidence demonstrating that, when they entered the cell, Joyner aggressively attacked a deputy, resulting in the use of force. Sergeant O'Neil has admitted that he administered two blows to Joyner's facial area with a closed fist in an attempt to restore order. Defendants deny striking Joyner once he had been brought under control and handcuffed and contend that any force was used in a good-faith effort to restore discipline.

## II. Analysis

### A. Issue 1: Evidence Concerning Joyner's Alleged Gang Affiliation

Joyner contends that any evidence about his alleged past or current gang affiliation is inadmissible because such information is irrelevant. "Nothing about [Joyner's] alleged gang affiliation makes it more or less likely that Defendants used excessive or unnecessary force during their interaction with [Joyner] on May 22, 2010." (Pl.'s Mem. Supp. Mot. Limine ("Pl.'s Mem. Supp.") 2.) Even if relevant, Joyner argues that such evidence should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice.

Defendants contend that evidence of gang affiliation is relevant to Sergeant O'Neil's state of mind and a determination of whether he acted maliciously and sadistically or in a good-faith effort to restore order. At the time of the May 22, 2010 incident, Sergeant O'Neil believed Joyner to be a "known gang member." (Defs.' Mem. Opp'n Mot. Limine ("Defs.' Mem. Opp'n") 2.) Defendants argue that "[t]his knowledge is relevant to [Sergeant O'Neil's] state of mind at the time of the incident and is relevant and its probative value outweighs any prejudice to [Joyner]." (Defs.' Mem. Opp'n 2.)

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. "[R]elevant evidence is admissible unless it is excluded for some other purpose authorized by the Federal Rules of Evidence." *Westfield Ins. Co. v. Harris*, 134 F.3d 608, 614 (4th Cir. 1998). For example, relevant evidence may be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "'[T]he

3

possibly prejudicial effect of evidence can require exclusion only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'" *Westfield Ins. Co.*, 134 F.3d at 614 (*quoting Morgan v. Foretich*, 846 F.2d 941, 945 (4th Cir. 1988)) (alteration in original).

Here, Defendants argue that evidence of Joyner's gang affiliation is relevant to Sergeant O'Neil's state of mind and explains why Sergeant O'Neil instantaneously responded with use of force under the circumstances presented. However, Defendants' own theory of the case undermines this argument. Defendants contend that Joyner's aggressive behavior precipitated the reaction by Sergeant O'Neil: "The evidence as presented by [Defendants] will demonstrate that Joyner was the aggressor and had attacked Jail Deputy Prieur causing Joyner, Prieur and Vickrey to crash to the floor." (Defs.' Mem. Opp'n 2.) Defendants' theory of the case suggests that Sergeant O'Neil reacted instantaneously to Joyner's then-current aggression. Under these circumstances, Defendants do not explain why or how any knowledge of gang affiliation had any bearing on Sergeant O'Neil's reaction or state of mind.[1]

Moreover, Defendants fail to explain why Joyner's alleged gang affiliation would have any bearing on the need for force under the circumstances of this case. The record suggests that Defendants were responding to a single noncompliant inmate in his cell.[2] Further, Defendants do not argue that they are trained to respond differently to incidents involving inmates with alleged

---

[1] During oral argument, counsel for Defendants conceded he did not know whether Sergeant O'Neil would testify that his knowledge of Joyner's alleged gang affiliation factored into his reaction.

[2] The record contains no indication, nor have Defendants asserted, that a larger jail-wide or cellblock-wide disturbance was afoot. Likewise, nothing suggests that other inmates posed a threat to them at the time they entered Joyner's cell.

gang affiliations. Defendants have not explained why, under these circumstances, Joyner posed more of a threat simply because Sergeant O'Neil believed him to be a gang member.

Defendants also fail to proffer any further information to explain the relevance of any gang-related evidence. Defendants simply assert that Joyner "was a known gang member" without indicating why this knowledge has any relationship to a subjective belief that use of force is needed under the circumstances. (Defs.' Mem. Opp'n 2.) For example, they do not assert Joyner was a current member of a jailhouse gang that had acted violently or aggressively in the past. Instead, Defendants improperly suggest that evidence of gang membership automatically supports their argument that any level of force was used in a good faith effort to maintain or restore discipline.

Ultimately, Defendants have not sufficiently connected any evidence of gang affiliation with the core issue before this Court. *See, e.g., United States v. Santiago*, 344 F. App'x 847, 850 (4th Cir. 2009) (holding that evidence of a defendant's gang membership, in conjunction with evidence that the defendant was part of a subgroup whose role was to take violent action against rival gang members and the defendant's presence in the rival territory, was admissible as intrinsic to the firearm possession charge and as an explanation for why the defendant carried a firearm); *United States v. Harris*, 587 F.3d 861, 868 (7th Cir. 2009) (holding that even though evidence of gang membership can be inflammatory, evidence of the defendant's involvement with a gang was properly admitted because it provided a motive for possessing a firearm and had a direct link to the charged firearm crime). Thus, the Court finds that evidence regarding Joyner's gang affiliation would carry at best only a marginally probative value.

"Evidence of gang membership can be inflammatory, with the danger being that it leads the jury to 'attach a propensity for committing crimes to [persons] who are affiliated with gangs

or that a jury's negative feelings toward gangs will influence its verdict.'" *Harris*, 587 F.3d at 867 (quoting *United States v. Montgomery*, 390 F.3d 1013, 1018 (7th Cir. 2004)). "Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior." *United States v. Irvin*, 87 F.3d 860, 865 (7th Cir. 1996). "Evidence of gang membership can taint a [party] in the eyes of a jury." *United States v. Sargent*, 98 F.3d 325, 328 (7th Cir. 1996). The assumption that all gang members act aggressively gives rise to the danger of unfair prejudice. *See Lee v. Andersen*, 616 F.3d 803, 810 (8th Cir. 2010). The Court finds that any evidence of Joyner's alleged gang affiliation would be highly prejudicial in nature.

Here, a genuine risk exists of the jury drawing an unfair inference that Joyner acted or would act in conformity with the character of a gang member. This risk substantially outweighs the minimal probative value of such evidence. Considering Defendants' tenuous basis for their relevancy argument, the low probative value, and the substantial danger of unfair prejudice, the Court will GRANT Joyner's Motion in Limine as it pertains to Issue 1 and exclude evidence of Joyner's past or current alleged gang affiliation.

    B.    **Issue 2: Evidence of Joyner's Prior Convictions and Sentence Length**

        1.    **Issue 2(a): Evidence of Joyner's Prior Convictions**

In Issue 2(a), Joyner asks the Court to bar Defendants from presenting evidence of the nature and circumstances of Joyner's criminal convictions. On May 22, 2010, the date of the incident, Joyner had been found guilty of various crimes but had not yet been sentenced. Joyner asserts that "[t]he details and circumstances of [his] criminal convictions are irrelevant to the issue of whether Defendants used excessive force." (Pl.'s Mem. Supp. 3.) Joyner seeks to exclude evidence of the number and statutory names of felony convictions he received. In response, Defendants argue that evidence of prior felony convictions may be admitted to

impeach the credibility of a witness under Federal Rule of Evidence 609(a)(1). Defendants indicate they intend to introduce evidence relating only to Joyner's March 12, 2010 convictions. Joyner's March 12, 2010 convictions include the following: robbery, four counts of use of a firearm in the commission of a felony, abduction with the intent to extort money, armed statutory burglary, and aggravated malicious wounding.

Under Rule 609(a)(1), evidence of a felony conviction is admissible in a civil case, subject to Rule 403, to attack a witness's character for truthfulness.[3] Thus, evidence otherwise admissible under Rule 609(a)(1) may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As the United States Court of Appeals for the Second Circuit states:

> Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully. District courts under Rule 609(a)(1) are to consider the relative probative worth of a witness's specific offenses of conviction, however, in light of the factors listed under Rule 403, when determining whether to admit evidence of those convictions for impeachment purposes.

*United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005) (internal citation omitted). "After conducting the Rule 403 balancing, the court may determine that evidence of the conviction, or certain aspects of evidence of the conviction, are properly excluded." *United States v. Howell*, 285 F.3d 1263, 1270 (10th Cir. 2002) (*citing United States v. Ford*, 17 F.3d 1100, 1103 (8th Cir. 1994)).

---

[3] Citing *Green v. Bock Laundry Machine Co.*, 490 U.S. 504 (1989), Defendants argue that Rule 403 does not apply to felony convictions admitted under Rule 609. However, Defendants fail to acknowledge that Rule 609 has been amended subsequent to the *Green* decision. Rule 609(a)(1)(A) now expressly incorporates Rule 403.

In this case, if Joyner testifies, the Court will allow Defendants to inquire as to whether Joyner is a convicted felon and as to his felony status as of March 12, 2010. This evidence is highly probative of his propensity to testify truthfully. Any prejudice from the introduction of this evidence will be tampered because the jury will already have knowledge of Joyner's inmate status and because Joyner has indicated a willingness to stipulate that he was a post-conviction inmate at the time of the incident. Any remaining prejudice does not substantially outweigh the probative value of this evidence.

However, the Court will exclude evidence of the statutory names and the number of Joyner's March 12, 2010 convictions. The statutory names of these convictions allude to crimes of a violent nature: robbery, use of a firearm in the commission of a felony, abduction with the intent to extort money, armed statutory burglary, and aggravated malicious wounding. While the probative value increases for convictions resting on dishonest conduct, convictions based on violent or assaultive crimes bear little on a witness's propensity to testify truthfully. *Estrada*, 430 F.3d at 618; *see also United States v. Sanders*, 964 F.2d 295, 298 (4th Cir. 1992) (recognizing that some offenses will have less bearing on a witness's propensity to tell the truth). Thus, while the fact of Joyner's felon status bears substantially on his credibility as a witness, the specific names of these felonies add little to that probative value. Further, because his convictions all stem from the same offense date, the number of his felony convictions also adds little to the probative value as it relates to his credibility as a witness. The jury will have the opportunity to hear that Joyner was a convicted felon as of March 12, 2010, and hearing the statutory names and number of those felony convictions will have very little further bearing on his propensity to tell the truth.

On the other hand, the statutory names and number of Joyner's felony convictions carry a high prejudicial effect, especially considering the nature of the case. If the jury hears the statutory names, a genuine risk exists, even with the benefit of a limiting instruction, that the jury will interpret that evidence as a propensity to act violently or aggressively rather than a propensity to testify untruthfully.[4] Likewise, if the jury hears the number of felony convictions Joyner received on March 12, 2010, a genuine risks exists that the jury will consider this evidence as general character evidence rather than as bearing only on his credibility as a witness. Because the substantial likelihood of prejudice outweighs the minimal impeachment value in the names and number of Joyner's convictions, the Court will exclude that evidence. For similar reasons, Defendants may not delve into the nature and circumstances of Joyner's convictions.

Accordingly, the Court will GRANT IN PART and DENY IN PART Joyner's Motion in Limine as it pertains to Issue 2(a). If Joyner takes the stand, Defendants may inquire as to whether Joyner is a convicted felon and as to the recent March 12, 2010 date of his felony status. Defendants may not reveal the nature and circumstances, the statutory names, or the number of his March 12, 2010 felony convictions.

The Court acknowledges that under certain circumstances Joyner may open the door to the currently excluded evidence. Because this case centers on the necessary level of force during the May 22, 2010 incident, the Court will weigh carefully how Joyner characterizes his conduct during the event at issue.

---

[4] During oral argument, counsel for Defendants suggested that the names of the felonies would inform the jury as to what type of person Joyner is. The Federal Rules of Evidence generally seek to prevent the use of this type of propensity character evidence. Rule 609 allows propensity evidence solely as it bears on the credibility of a witness.

### 2. Issue 2(b): Evidence of the Length of Joyner's Current Sentence

In Issue 2(b), Joyner requests that the Court bar Defendants from introducing evidence concerning the length of his current sentence. Defendants concede that evidence as to Joyner's length of sentence is irrelevant. (Defs.' Mem. Opp'n 4.) Accordingly, the Court will GRANT Joyner's Motion in Limine as it pertains to Issue 2(b) and will exclude any evidence as to the length of Joyner's current sentence.

### C. Issue 3: Evidence of Prior Institutional Infractions

In Issue 3, Joyner asks the Court to bar Defendants from introducing evidence concerning any institutional infractions committed by Joyner at VBCC prior to May 22, 2010. Joyner argues that "Defendants were not aware of the details of any prior alleged institutional infractions" and that "prior infractions are [not] a relevant factor in determining the degree of force used to handle a prisoner." (Pl.'s Mem. Supp. 3.)

In response, Defendants indicate they "anticipate that Joyner will contend that the reason for his disruptive behavior was that he should not have been placed in the disciplinary segregation cell but should have been kept in medical." (Defs.' Mem. Opp'n 4.) Assuming Joyner makes this argument, Defendants "contend that evidence of all of [Joyner's] prior institutional offenses would be admissible to explain why it was appropriate for Joyner to be housed in the disciplinary segregation block." (*Id.*)

During oral argument, counsel for Joyner indicated that Joyner might argue, as an explanation of why he covered his cell window, that he wanted to be housed in the medical tier instead of administrative segregation. The Court indicated that, if Joyner were to make this argument, he likely would open the door to cross-examination as to why he was housed in

administrative segregation rather than medical. The parties then discussed possible stipulations to resolve this issue.

Because the relevancy of Joyner's prior institutional infractions necessarily depends on what arguments Joyner makes at trial, the Court will RESERVE RULING on Issue 3 of Joyner's Motion in Limine.[5] The Court will entertain any stipulations from the parties and will rule on this issue based on those stipulations, if any, and the parameters of the testimony at trial.

### III. Conclusion

For the foregoing reasons, the Court will GRANT Joyner's Motion in Limine as it pertains to Issue 1 and Issue 2(b), will GRANT IN PART and DENY IN PART Joyner's Motion in Limine as it pertains to Issue 2(a), and will RESERVE RULING on Joyner's Motion in Limine as it pertains to Issue 3.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Date: July 3, 2012
Richmond, Virginia

---

[5] The Court would have to make different findings should Defendants wish to use this evidence other than in rebuttal to a claim by Joyner that his segregated status somehow impinged on his need or right to be in medical housing. For instance, if Defendants seek to use this evidence as bearing on their state of mind, they would have to lay a proper foundation as to admissibility, including Defendants' personal knowledge of any institutional infractions.

11